Johnson, Justice,
 

 delivered the opinion of the court. — This was a suit instituted below, against the plaintiffs here, to recover a debt of $30,000, for which they had become bound to the United States, as sureties for one Rector ; who is described in the bond as “ surveyor of the public lands in the states of Illinois and Missouri, and the territory of Arkansas.” The plea was performance, and the breach alleged in the replication is in these words : “that at the time of the execution of the bond, there were in the hands of the said William Rector, as such surveyor, to be by him, in the discharge of the duties of his office, applied and disbursed for the use and benefit of the plaintiffs, divers sums of money, amounting, &c., and that the said William Rector hath not applied and disbursed the same money, or any part thereof, for the use and benefit of the plaintiffs, as in the execution of the duties of his said offiee he ought to have done.” On this plea, issue was taken, and at the trial, a bill of exceptions was taken to sundry instructions of the court, given or refused, which will be considered in their proper place. Two questions of a more general character must first be disposed of.
 

 The first arises on the form of the judgment; the jury having found for the plaintiffs below, on the breach assigned, assess the damages for breach of the condition, at $41,000 ; and the judgment rendered is “
 
 quod
 
 recuperet,” the damages, not the debt aforesaid. The parties, plaintiffs in errror, are the sureties, and it is perfectly clear, that as to them, a judgment cannot be rendered beyond the penalty, to be discharged on payment of what is actually due; which, of course, can only be, where it is a sum less than the penalty. It is proposed, on behalf of the United States, to release the surplus, and such'is their right; but this still leaves the form of the judgment uncured and unamended. It would seem, that in adopting this form of rendering judgment, the court below has been misled by the application of the 26th section of the act of 1789 to this subject. If so, it is a clear misapprehension ; since that section, if it sanctions such *a judgment at r*oS(, all, is expressly confined to three cases — default, confession, or *- demurrer ; with neither of which is the present case affected. There is no doubt, then, that the judgment must be reversed on this ground; but as other points, as well as those made in the bill of exceptions, might again embarrass the cause in the court below, and would most probably bring it back again here, it becomes necessary to consider those points.
 

 The seeond preliminary point alluded to is, whether the bond was not taken without law, or contrary to law, so as to be illegal and invalid. This turns on the official character assigned to Rector in the bond, or on that in
 
 *248
 
 which, in fact, he is to be regarded in law. He is described as
 
 “
 
 surveyor of public land
 
 ”
 
 in certain districts, not as surveyor-general. And such, in fact, was his literal character, for the office of surveyor-general still exists, nominally unique, although a large proportion of his powers and duties have been transferred to the surveyors of public lands in certain districts, subsequently detached from the region over which his powers were originally extended. In deciding on this point, three questions are to be considered ; 1st, whether he was bound to give bond at
 
 all;
 
 2d, whether the words of the condition embrace the duties of a disbursing officer ; and 3d, whether those duties were incident to his office.
 

 Upon looking through all the laws passed upon this subject, it can hardly be doubted, that this officer was intended to be included in the provision of the act of May 7th, 1822, requiring security of the surveyor-general. Literally, there was, at that time, provision made under the laws for only one surveyor-general; but it is abundantly evident, that the officer who gave this bond was intended to be included in the provisions of that act, under the description of a surveyor-general. The indiscriminate use of this appellation in the previous and subsequent legislation of congress on the subject, will lead us to this conclusion. Until the passing of the act of Febuary 28th, 1806, all the surveying for the United States was carried on under the provisions of the act of May 18th, 1796, as amended by the act of May 10th, 1800 ; and under the control and superintendence of the surveyor- general. * In the year 1806, after the ^purchase of Louisiana, the powers of that J officer were extended to the country newly acquired, and he was enjoined to appoint a sufficient nnmber of skilful surveyors, as deputies, one of whom, to be appointed with the approbation of the secretary of the treasury, rvas to assume the character of principal deputy, and to exercise over the co-deputies the general power vested in and exercised previously by the surveyor-general. The subordinate character of all these officers was distinctly marked by that act; and yet we find, that in the act of March 3d, 1807, in the second section of the act, the epithet of surveyor-general is expressly applied to that individual of them who should have been employed in surveying the public lands south of the Tennessee. (2 U. S. Stat. 440.) Tet at a subsequent day, to wit, March 3d, 1815 (3 Ibid. 229,) we find the same officer designated generally as a surveyor of that district of country. So also, when the act of April 29th, 1816, was passed, which abolished the appointment of these deputies, and conferred the appointment of their present substitutes upon the president, the latter are simply designated as a surveyor, and not surveyor-general. Tet when the act of May 7th, 1822, is passed, requiring bond to be given by these officers, it is expressed altogether in the plural number, as recognising the existence of more than one surveyor-general.
 

 There were, then, no other officers in existence, besides the actual surveyor-general, who could come within the literal enactments of that statute ; unless we include a surveyor appointed under the provisions of the act of April 29th, 1816. That is the present obligor. And if further confirmation be required to establish the necessary extension of the provisions of that law to tho present cause, w.e have it in the act of May 26th, 1824, in the second section of that act; the language of which expressly recongises the existence of more tnan one surveyor-general. It is clear, then, that frmn the
 
 *249
 
 time that the appointment of deputies by the surveyor-general was superseded by the appointment of surveyors by the treasury department, the independent character in which whose officers then acted, identified them with the surveyor-general, so far as to have led to the use of language by congress, adapted to confounding them with the surveyor-general. We, therefore, have no doubt, that they were included in the '^provisions of the act which required bonds to be taken on their accession to *- office. Nor do we think that there is any more doubt, that the law contemplates them as disbursing officers. It is express in requiring them to give bond for the faithful disbursement of public money
 
 ;
 
 and
 
 cid bono
 
 do this, if they were not regarded as disbursing officers ?
 

 But the words of the statute which relate to disbursements are omitted from the condition of this bond, and the only words inserted are, “ that he shall faithfully discharge the duties of his office.” The court feel no difficulty in maintaining that where the conditions are cumulative, the omission of one condition cannot invalidate the bond, so far as the other operates to bind the party. But the question is one of much more difficulty, whether, where the law is express that the condition shall be both for the faithful disbursement of money, and the general discharge of duty, and the latter only is inserted ; the former may still beheld to be comprised within the general words of the latter. But for the language used in the statute, the court has no doubt, that the case would have been open to proof, that the disbursement of money was one of the known and habitual duties of the office, and included-in the general words ; but whether the omission of the express words which imposed this liability does not preclude a resort to their restoration incidentally by proof, is a question on which the court have felt much difficulty, and which they will not now decide.
 

 The next questions to be considered are those presented by the bill of exceptions, and of these, that which goes to the sufficiency of the certificate, has already been disposed of in the case of
 
 John Smith T.
 
 v.
 
 United States (ante,
 
 p. 233), in which the same form of certificate was held to be a substantial compliance with the law under which it was resorted to as proof.
 

 The remaining questions grow out of this state of facts. Rector was appointed surveyor, or, at least, commissioned as such, on the 13th of June 1823 ; and this bond bears date the 1th of August 1823. Between the 3d of March and the 4th of June, in the same year, there had been paid to him from the treasury, the sum of money found by the jury. So that it was paid to him before the commission, and before the bond in proof. *On ., this state of facts, the bill of exceptions asserts three grounds of L defence : 1. That the sureties could not be made liable at all for the money so paid : 2. That if at all, they ought to be let into proof that Rector had appropriated the money to his own use before the date of the bond : or, 3. That he had paid it, or enough of it to cover the penalty of the bond, to the use of the United States, before they became bound for him.
 

 On these points we feel no difficulty in affirming, that for any sums paid to Rector prior to the execution of the bond, there is but' one ground on which the sureties could be held answerable to the United States, and that is, on the assumption that he still held the money, in bank or otherwise. If still in his hands, he was, up to that time, bailee to the government ; but upon the contrai’v hypothesis, he had become a debtor or defaulter to the
 
 *250
 
 government, and bis offence was already consummated. If intended to cover past dereliction, tbe bond should have been made retrospective in its language. The sureties have not undertaken against his past misconduct; they ought, therefore, to have been let into proof of the actual state of facts so vitally important to their defence ; and whether paid away in violation or in execution of the trust reposed in him; if paid away, he no longer stood in the relation of bailee. It was not, then, a case to which that act applies, which requires the submission of accounts to the treasury, before discounts can be given in evidence ; since this defence goes not to discharge a liability incurred, but to negative its ever existing. In giving instructions to the jury on these points, therefore, the court erred, as well as íd refusing to let the defendants into proof, as prayed ; since such testimony presents a direct negative to the breach alleged, which is, that the obligor then had the money in his hands.
 

 Judgment reversed, and
 
 venire facias de novo
 
 awarded.