Mr. Justice Hagner
delivered the opinion of the Court:
This is an action at law brought against Dudley as the principal, and Boswell, Hinds, Hood, Browne and Webber, as the sureties on a bond to the United States in the penalty of $100,000. The condition of the bond was: “ If the said Dudley shall, and doth at all times henceforth and during his holding and remaining in said office, carefully discharge the duties thereof, and faithfully expend all public moneys, and honestly account without fraud or delay for the same, and for all public property which shall or may come into his hands, then the above obligation to be void; otherwise to remain in full force and virtue.”
The declaration avers that Dudley was appointed the superintendent of Indian’ Affairs for the Territory of New Mexico and accepted the appointment.,
The breach of the bond is alleged to be that Dudley, not regarding his duties in the premises, did not faithfully expend or honestly account without fraud or delay for all public moneys which came into his hands; but, on the contrary, did utterly neglect and refuse, and still doth neglect and refuse to faithfully expend or honestly account for the sum of $40,923.19 of the public moneys which came into his hands by virtue of his said office, whereupon the defendants became and were and still are liable to the plaintiff in the, said sum of $100,000.
The only defendants summoned were Hood and Browne, who were the only residents of the District. Each pleaded separately non est factum, and issue was joined on the pleas. The result of the trial was a verdict in favor of the defendants under the instructions of the court, to which exceptions were taken by the United States.
The bill of exceptions states that Dudley, previous to the delivery of the bond in suit, which bears date April 11, 1873, had held this same office of superintendent of Indian Af *339 fairs of the Territory of New Mexico under a recess appointment by the President, bearing date the 18th of November 1872, and continuing until the end of the next ensuing session of the Senate; that under said recess appointment he gave an official bond to the United States, bearing date the 29th day of September, A. D. 1872; that having been nominated to the Senate for the office and confirmed therein, during the said session, Dudley, on the nth day of April 1873, and before the expiration of the session of the Senate, delivered to the United States the alleged official bond herein sued upon. A copy of the bond was offered in evidence under Sec. 886 R. S. U. S. which declares that when suit is brought in case of delinquency against any person accountable for public money, “all copies of bonds, contracts, etc., connected with the settlement of any account between the United States and an individual, when certified by the Register, etc., to be true copies of the originals on file, shall have equal validity and be entitled to-the same degree of credit which would be due to the original papers if produced and authenticated in court.” It was admitted in evidence by the court against the objection of Hood and Browne, who conceded that Dudley the principal, had signed the bond; but they declined to admit that Boswell or Hinds or'Webber, the other defendants, who had not appeared and were not summoned, had also signed it, and insisted the plea of non est factum having been interposed by the two defendants, it became essential that the execution of the bond, as to those three obligors, should be regularly proved.
The court overruled the objection and admitted this copy of the bond in evidence, and it was given to the jury. The United States then proceeded to offer certain transcripts from the books of the Treasury, and also to prove some additional receipts by Dudley of public money, not mentioned in those transcripts, for small amounts.
The defendants objected to the reception of this transcript and of the additional receipts, because they were not properly *340 authenticated, and were not admissible to charge the sureties. All these objections were overruled, and to each of these rulings the defendants noted exceptions.
Finally, the United States having closed, the defendants, upon several grounds, asked the court to instruct the jury that no case had been' made, and that a verdict should be returned in their favor.
All of the principal objections were assembled in the motion, but those upon which the Justice really ruled are these:
First, that under the terms of the bond in suit, the defendants as sureties, were not liable for any balance of public moneys remaining in the principal’s hands received during his former term of office, at the date of said bond.
Second, that no competent evidence had been adduced, showing any such balance to be in the hands of said principal at the date referred to.
This motion having been argued, the court instructed the jury substantially as follows:
“The condition of the bond is that the principal shall faithfully account for all public moneys which shall thereafter come into his hands. Here the sureties are sought to be holden for moneys which came into his hands anterior to his appointment. The sureties did not intend to make themselves liable for such moneys. I am disposed to rest my decision on this point alone. The jury will render a verdict for the defendants.”
To this instruction by the court to the jury the plaintiff, the United States, then and there excepted.
The contention of the defendants is that under the first bond, in what is' called the recess appointment, Dudley had received a large 'sum of money; and when he was appointed to succeed himself, after the execution of the bond of the nth of April 1873, .there was charged against the second bond this same sum of money; by which proceeding, the present sureties were sought to be held liable for moneys the government had enabled Dudley to receive only by *341 virtue of his former appointment: for the faithful conduct under which the United States had previously accepted a bond, with a different set of sureties.
The form of the bond differs in an important respect from that stated by the ¡Justice in his opinion. He states the condition of the bond to be that the principal shall faithfully account for all public moneys which shall thereafter come into his hands. The conditions of the present bond are that Dudley “ shall and doth at all times henceforth, and during his holding and remaining in said office, carefully discharge the public duties thereof, and faithfully expend all public moneys, and honestly account, without fraud or delay, for the same, and for all public property which .shall or may come into his hands/’ The contention made before us here is that each of these bonds involves only its own special responsibility ¡for default; and that it is unjust that sureties, who are to be held only upon strict construction of their liability which is'not to be extended by implication, should be held responsible for money collected by the officer under a previous bond.
The general rule is laid down in Mechem on Public Officers, Sec. 286, that sureties are bound only for default occurring, during the term. In section 287, the general principle is stated thus:
“ In accordance with the principles laid down in the foregoing section, it is held that sureties upon the bond of an officer continued in office for a second or other successive terms, are not liable for defaults which occurred during a preceding term, or for moneys which should have been in his hands ;at the beginning of his second term, but which he had appropriated to his own use during his first term, unless, of course, they were also his sureties for that term; and it is always open for them to show that the default complained of did in fact occur during a previous term for which they were not sureties. In such a case the sureties for the previous term are alone liable.”
The cases there cited, and the decisions of the Supreme *342 Court of the United States, settle the law of this case very clearly.
Farrar vs. The United States, 5 Peters, 373, was an action against the sureties on the bond of Rector as surveyor of public lands. Rector was commissioned in June 1823, and the bond bears date of the following August. Before June he had received the amount of public money found by the jury. The defendants offered to prove that Rector had appropriated the money to his own use before the dateof the bond; or, that he had paid enough of it to the United States to cover the penalty, before they became bound for him. The court below overruled this offer. On appeal the Supreme Court said (389):
“ On these points we feel no difficulty in affirming that for any sums paid to Rector prior to the execution of the bond, there is but one ground on which the sureties could be held answerable to die United States, and-that is on the assumption that he still held the money in bank or otherwise. If still in his hands, he was, up to that time bailee to the Government; but upon the contrary hypothesis, he had become a debtor or defaulter to the Government, and his offence was already consummated. If intended to< cover past' dereliction, the bond should have been made retrospective in its language. The sureties have not undertaken against his past misconduct. They ought, therefore, to have been let into proof of the actual state of facts so vitally important to their defence; and whether paid away in violation or in execution of the trust reposed in him, if paid away, he no longer stood in the relation of bailee.”
The condition of the bond in that case was of the most general description, namely, that he should faithfully discharge the duties of his office; but we see nothing in the form of that bond which would show that what was said there was exceptional, and would not apply to the present case.
The cases of U. S. vs. Boyd, 15 Peters, 187, and Bruce vs. U. S., 17 Howard, 437, fully recognize this doctrine. In the *343 latter case the facts were very similar to those that occurred here. There was a re-appointment.as Indian agent, and an alleged default under'the first bond was carried over by the officers of the Treasury against the second bond.
“ At the trial the defendant asked the court to instruct the jury inter alia :
2. “ If the jury find from the evidence that Bruce was a defaulter at the time of the execution of the bond sued on, they will find for the defendant Steele to the extent of such pre-existing default.
3. “ Defendant Steele is not liable for any defalcation existing on the part of Bruce prior to the 29th of August, 1844.
4. “ Defendant Steele is not liable as the surety of Bruce for any money received by Bruce before he was sub-Indian agent.”
These instructions were all refused, and the court below charged the jury: that if when Bruce was re-appóinted agent he had money in his hands of the United States which he received as agent under his previous commission, then he was bound to- apply and account for such moneys under the second commission, and his sureties are bound under the bond which is sued on. But if Bruce had appropriated the moneys received under the’ previous commission, to his own use, when the bond was given, then the first set of sureties are responsible for the moneys thus illegally appropriated, and these ¡defendants are not liable; and the burden of proof is on the defendants to show that Bruce had illegally appropriated the moneys before the bond sued on was given. The Supreme Court held the trial court was right in giving the instruction as above stated, and said: " When Bruce received his second commission, if any money or property which he received- at his former term of office still remained in his hands,. he was bound to apply and account for it, under the appointment he then received. The terms of the bond! clearly require it, and his sureties are bound for it. It was so much money in his hands to be disbursed and applied under his second' appointment. In *344 deed, if it were otherwise the Government would have no security for it. For if it was not wasted or misapplied during his first official term, but still remained in his hands to be applied according to his official duty, the sureties in his first bond would not be liable. For there would, in that case, be no default or breach of duty in that term of office; and if afterwards wasted or misapplied, it ¡would be a breach of duty imthat official term lor which Steele was one of his sureties.
“ Undoubtedly the sureties in the second term of office are not responsible for a default committed in his first. But if any part of the balance now claimed from him was misapplied during that period, it was incumbent on the plaintiffs in error to prove it. No officer without proof will be presumed to have violated his duty; and if Bruce had done so, Steele had a right, under the opinion of the Circuit Court, to show it and exonerate himself to that amount; but it could not be presumed merely because there appeared by the account to have been a balance in his hands at the expiration of his first term.”
The same principle is declared in the case of the United States vs. Stone, 106 U. S., 525.
That such is the law generally with respect to the liability of sureties on a second bond is unquestionable. It then results that unless there is something peculiar in the language of this bond, which would render these rulings inapplicable, the court below was in error in granting the instruction.
We cannot find that there is any such peculiarity in the form of bond.
By its plain terms Dudley, during his remaining in office, undertook “ carefully to discharge the duties thereof, and faithfully expend all public moneys, and honestly account without fraud or delay for the same and for all public property which shall or may come into his hands.” Upon the execution of this bond, it became answerable for any money then in his hands, reteived by him under his first appoint *345 ment, as much as if it had been sent to him from the Treasury; or as if he had collected it from a third person who had been his predecessor in office.
If Dudley, at the time the second bond was given, was already a defaulter to the amount previously received by him, and which he ought then to have had ready to turn over to whoever should be appointed to succeed him, then there would have been nothing to turn over to whoever should receive the office after the termination of the first term, and consequently it could not have been received under the second bond, and that bond could not have been held liable for the previous defalcation.
It was the right of the defendants, if they could do so, to show that Dudley .was a defaulter at the inception of the liability of the sureties; that is to say, that he had not the money in bank or in his pocket, but that he had wasted it. In that case, the second set of sureties was not responsible., They have the right to show this, if they can, on another trial. It is claimed he is in fact a creditor of the Government for $1,200; but no such proof was submitted on the trial, although the assertion appears to have been made.
However hard the- decision may seem to be, the law is inexorable; and we decide the case in accordance with what we are satisfied is fixed law.
The correctness of the rulings upon the two points of evidence stated above became immaterial in the progress of the case, and we have merely stated them as part of the history of the trial.

The. ruling of the court below is therefore reversed, and the case is remanded for a new trial.