WILLIAM P. STEVENSON *v.* UNION INDEMNITY CO.

(*Nashville,* December Term, 1929.)

Opinion filed  May 27, 1930.

LEE, PRICE, MCDERMOTT & MEEK, for complainant, appellant.

FRANTZ, MCCONNELL & SEYMOUR, for defendant, appellee.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

Complainant sued on a bond *executed November 15, 1924,* by officers of Motor Finance & Guaranty Corporation, with defendant as surety, in words and figures as follows:

"State of Georgia

"County of Fulton

"Know all men by these presents: That we, the undersigned, being all officers of the Motor Finance & Guaranty Corporation as principals, and we, Union Indemnity Company of New Orleans, Louisiana, as sureties, do hereby acknowledge ourselves officially and personally

held and firmly bound unto the Motor Finance & Guaranty Corporation for the use and benefit of the Tennessee stockholders in the sum of Ten Thousand Dollars conditioned that all monies arising out of the sale of the stock of said Company in the State of Tennessee, shall be faithfully and honestly expended in the purposes for which the Company was organized. In the event the money arising out of or received from the sale of the stock of said Company in the State of Tennessee shall be faithfully and honestly expended in the purposes for which the Company was organized, then this bond shall be null and void. Otherwise to remain in full force and effect. In the event of a breach of above bond any stockholder may bring suit against the obligants on the bond and for the amount that has not been faithfully and honestly expended in the purposes for which the Company was organized.

"Witness our hand this 15th day of November, 1924.

"SURETIES:

"Union Indemnity Co.

"By Balie C. Gross, Gen. Agt.

"PRINCIPALS:

"J. O. Partain, President

"O. M. Stanton, V.-Pres.

"Tracy S. Newton, Secy & Treas."

It was alleged that complainant in *February, 1924,* in connection with a subscription to its stock turned over to the Motor Finance Corporation $10,000 of gold bonds worth par.

The bill was demurred to on three grounds, the second of which reads as follows:

"The bond sued on shows on its face that it was executed on or about November 15, 1924, whereas the

matters out of which this lawsuit grows occurred long prior to that time as shown by the allegations of the bill."

This ground was sustained by the Chancellor. Appellant insists (1) that the bond should be given a retroactive effect, and (2) that, if not so treated, the bill shows a breach after its execution.

The general rule is that a bond will not be given a retroactive effect unless it clearly appears that it was so intended. "A bond should not be held to cover a liability occurring before its execution unless its terms make provision to that effect." Note 70 (a), 9 C. J., p. 41, citing *Love* v. *Cohn,* 93 Ark., 215, 124 S. W., 259.

Counsel refer to 9 C. J., p. 40, where, in Par. 65, it is said that "the condition may include acts done before the execution," citing in the note *Hatch* v. *Attleborough,* 97 Mass., 533. The action in that case was "by the town against Hatch and the sureties on his official bond as Treasurer." The bond is not set out in terms in the opinion, but it appears that, while the instrument bore date after the date of the election of Hatch, he had been chosen Treasurer for the current year, "on condition that he shall as Treasurer faithfully account for and pay over all moneys by him received." The Court said:

"The objection made at the trial, before MR. JUSTICE HOAR, and by him overruled, was that by the terms of the bond the obligors were not liable for any money except such as was received after the execution thereof. We do not so read its language or interpret its provisions. The defendant Hatch held the office of treasurer for the entire municipal year of 1864, and, if any money came into his hands before his bond was given and accepted, it is as much secured by the bond as that received

afterwards. The same construction is always given to the bond of an executor or administrator. *Dawes* v. *Edes,* 13 Mass., 177. The plaintiffs are therefore entitled to judgment for the penalty.''

This holding was sustained on the facts of that case. Quite obviously the date which the bond bore was not of the essence of the obligation. Official, executor and administration bonds are usually required by law, it being always in the contemplation of the parties that the indemnity shall cover the funds as of and from the beginning of the term, or qualification. The situation here presented can hardly be said to be analogous.

█ The bill charged that the Motor Finance & Guaranty Corporation, a non-resident corporation, was licensed under the ''Blue Sky Law'' September, 1922, and at that time filed with the Secretary of State a bond of $100,000, conditioned that the proceeds of stock sales in Tennessee should be faithfully and honestly expended for corporate purposes, and providing further that the bond was executed for the use and benefit of Tennessee stockholders and that any stockholder might sue for a breach of the obligation. It was further alleged that about November 15, 1924, the Commissioner of Insurance and Banking became convinced that the bond was not solvent and in order to insure the financial condition of the corporation required the execution of a substitute bond, to be conditioned as was the original bond executed in 1922; and that thereupon the bond sued on was executed. Manifestly neither the terms of the original bond nor the conditions under which it was executed carried any suggestion that it was intended to have retroactive effect. Quite obviously it related only to transactions to be thereafter had, and it would not be ques-

tioned that complainant, whose money went to the corporation after its execution and long before the execution of the substitute bond made in November, 1924, was within its protection. It is assumed, of course, that action is brought on the substitute bond, rather than upon the original bond, because of the insolvency of the sureties on the original bond.

Insisting upon the right to recover on the substitute bond, the argument is, that since this bond runs "for the use and benefit of the Tennessee stockholders," and is "conditioned that all monies arising out of the sale of the stock of said company in the State of Tennessee shall be faithfully and honestly expended," etc., and since it provides that, in the event of a breach "any stockholder" may bring suit thereon, that it includes complainant, although his money had been paid over long before the bond was made. Right of action based on misuse of funds relates only to "monies arising out of the sale of the stock," and the construction to be given the term "arising" is relevant. The tense is the present, with application to the future. It connotes most naturally that which may arise. Clearly it does not contemplate a defalcation consummated many months before. This could hardly have been in the minds of the parties. If so intended words more apt should have been employed. Moreover, the bill itself, after setting out the inducing purposes held out by the Finance Corporation for stock subscriptions, proceeds, "and also upon the further inducement represented and held out to complainant that as a stockholder he was and thereafter would be protected by a good and solvent bond," etc. Now these inducements and representations on which it is alleged that he acted quite obviously had reference to the orig-

inal bond of $100,000, the solvency of which had not then been questioned. We are not of opinion that this bond can be fairly construed as retroactive.

But it is insisted that "whether or not this bond is construed to have retroactive effect, complainant can payment of the money, that is the delivery of complain-show a breach after the execution thereof." To sustain this insistence the allegations of the bill must be to this effect. Counsel insist that while the bill does charge the ant's securities, in February, 1924, the misappropriation of the fund did not occur until later and after the 15th of November, 1924, and that this is reasonably to be inferred from the language of the bill. That portion of the bill which is pertinent to this issue reads as follows:

"On or about February ——, 1924, the said Motor Finance & Guaranty Corporation, undertook to and did, in Blount County, Tennessee, procure complainant to subscribe for $5000 par value of its capital stock, and pending payment therefor procured and required complainant to deposit at that time with said corporation $10,000 of gilt edge bonds which complainant then owned in various companies, all of which bonds were worth at least par. Said bonds were listed on the New York Stock Exchange and were negotiable, and were immediately convertible into cash at par, so that they represented in fact, so much money or cash. In this fashion the said Motor Finance & Guaranty Corporation procured from complainant the said sum of $10,000, and said corporation thus got said money in a transaction arising out of and received the same from, the sale of said stock to complainant as hereinbefore set out. It later developed that said Corporation converted said bonds into cash, but instead of applying said money to the payment of said.

stock or any part thereof, or to the purposes for which said corporation was organized, the said funds never went into the Treasury of the said Corporation, but were used, converted and dissipated by the agents and officers of the said corporation for their private purposes and thus complainant was not only deprived of said sum of $10,000, but the same was never permitted by the said Motor Finance & Guaranty Corporation, to go into the Treasury of the Corporation or to be expended in the purposes for which said corporation was organized.''

Reliance is had for this contention upon the words "it later developed," etc. Taken in the context we are of opinion that the word "develop" is used in the sense of the discovery rather than with reference to the date of the defalcation. Taking the quotation from the bill as a whole, we are unable to escape the conclusion that it was intended to charge that the misappropriation took place at the time when the securities were realized on. We think no other construction is consistent with the allegation that the funds "never went into the treasury," but were used, converted and dissipated by the agents and officers of the corporation. If it was intended to charge that this dissipation of the funds was not contemporaneous with the original transaction, as is to be implied from the language used, but took place at some time many months later and subsequent to the execution of the bond sued on, we think it safe to assume that the skillful draughtsman of this bill would not have failed to make this clear. And if, upon the filing of the demurrer, and the calling of the attention of counsel to the materiality of the time when the misuse of the funds, indemnified against by the conditions of the bond, occurred, it had been possible to amend the bill accordingly,

consistently with the facts, we think it can be assumed that learned counsel would have taken leave to so amend.

The rule that a surety on a bond is not liable for default of his principal occurring prior to the execution of the bond, unless by its terms it clearly appears that it was intended to be retroactive is well sustained, not only by the authorities cited in the opening of this opinion, but by many others. See, Stearns' Cases on Suretyship, page 110; *McMullen* v. *Winfield Building & Loan Assn.*, 64 Kans., 298; 56 L. R. A., 924; *U. S.* v. *Boyd*, 10 U. S. (L. Ed.) 706; *U. S.* v. *LeBaron*, 19 Howard, 73; *Boone County* v. *Jones*, 54 Iowa, 699; *Rochester* v. *Randall*, 105 Mass., 295; *Pine County* v. *Willard*, 39 Minn., 125.

In view of the conclusion reached that the decree of the Chancellor was correct in sustaining the second ground of demurrer and dismissing the bill, we have found it unnecessary to discuss questions arising under the first and third grounds of the demurrer. The decree is affirmed.