**AMERICAN SURETY CO. OF NEW YORK v. SCOTT et al.**

**No. 733.**

Circuit Court of Appeals, Tenth Circuit.

March 27, 1933.

Walter E. Schwed, of Denver, Colo. (Edgar McComb and Milton D. Green, both of Denver, Colo., on the brief), for appellant.

Geo. E. McConley, Jr., and Raymond L. Sauter, both of Sterling, Colo. (Raymond M. Sandhouse, of Sterling, Colo., on the brief), for appellees.

Before LEWIS, PHILLIPS, and McDERMOTT, Circuit Judges.

PHILLIPS, Circuit Judge.

On July 6, 1928, H. L. Scott and Guy Curlee entered into a construction contract with the State of Wyoming for the doing of certain grading and other work on Federal Aid Road Project No. 162–A.

On July 17, 1928, Scott and Curlee entered into a subcontract with the Corbett Construction Company, in which the Construction Company agreed

"To move 100,000 yards of earth more or less at a price of 18c per yard, said dirt to be moved between the following stations, stations 1450 to 1680; 1699 to 1736 plus 60; 1776 to 1802; and 1833 to 1850.

"To start the work on or before August 1st, 1928, and to complete the same within one hundred working days.

"To use sixty or more head of stock on the job.

"To do this job according to State Highway specifications.

"To furnish a bond in the amount of $10,000.00.

"To approve and OK all expenses and turn over his bills for expenses to Scott and Curlee."

And in which Scott and Curlee agreed

"To pay 18c per yard for all dirt put in to the job according to Highway specifications.

"To finance Corbett ·Construction Company by paying the bills for hay, grain and labor and other expenses paid out by Corbett for the job; or incurred on said job, said bills to be paid between the first and fifth of each month. Whenever the Highway Dept. shall approve of the work done by Corbett as being up to specifications, the Corbett Construction Company shall be relieved of all responsibility in connection with the subcontract."

On August 3, 1928, the Construction Company as principal and the American Surety Company as surety, executed and delivered to Scott and Curlee an indemnity bond in the sum of $10,000 conditioned for the faithful performance of such subcontract, subject to the following conditions, among others, which by the express terms of the bonds were made conditions precedent to any right to recover thereon.

"First. That in the event of any default on the part of the Principal, a written statement of the particular facts showing such default and the date thereof shall be delivered to the Surety, by registered mail, at its office in the City of Denver, Colo. Promptly and in any event within ten (10) days after the Obligee or his representative, or the Architect, if any, shall learn of such default; that the Surety shall have the right within thirty (30) days after the receipt of such statement to proceed, or procure others to proceed, with the performance of such contract. * * *

"Fourth. That the Obligee shall faithfully perform all the terms, covenants and conditions of such contract on the part of the Obligee to be performed. * * * *"

The Construction Company commenced work under such subcontract on August 10, 1928, and suspended work thereunder on November 28, 1928, due to inclement weather conditions.

Section 19 of Division 1 of Standard

Specifications for Road and Bridge Construction of the Highway Department of the State of Wyoming, defines a *working day* as follows:

"Working Day. Any calendar day, exclusive of Sundays and legal holidays, of a single full working shift and on which the weather or the condition of the ground does not make it impossible for the Contractor to make effective use of at least fifty per cent of the usual daily men hours during regular working hours. Each full working shift in 24 hours shall be counted as a 'Working Day.'"

Between August 10 and November 28, 1928, there were fifteen Sundays and two holidays. During that period there were ten days when it was impossible to do any work due to adverse weather conditions. It follows that the Construction Company had used only ninety working days when it suspended work on the project.

Scott and Curlee promptly paid all bills for expenses incurred by the Construction Company in carrying out such subcontract that were approved by the latter and turned over to Scott and Curlee. Certain bills for expenses incurred by the Construction Company were filed with the state, which the Construction Company had failed to turn over to Scott and Curlee. The latter first learned of such unpaid bills about December 20, and paid them on February 20, 1929.

On January 21, 1929, the Construction Company notified Scott and Curlee that it would not further perform the subcontract, and repudiated such contract.

Scott and Curlee gave written notice to the Surety Company on January 30, 1929, that the Construction Company had breached such subcontract by abandoning the work and refusing to complete the subcontract.

The Construction Company moved 37,700 yards of earth under the subcontract. Scott and Curlee advanced, for expenses incurred by the Construction Company, $10,959.80 by the payment of bills approved and turned over to the Construction Company, $4,230.02 by the payment of bills filed with the State of Wyoming, and $4,593.88 by deductions made by the state from moneys due Scott and Curlee on account of bills of the Construction Company filed with the state. Under its contract, Scott and Curlee were to receive 40 cents a cubic yard for moving the earth which the Construction Company had agreed to move under its subcontract. After the Construction Company had abandoned its subcontract, and when weather conditions permitted a resumption of work on the project, Scott and Curlee were unable to secure men and teams in sufficient numbers to satisfy the state, and on that account the state canceled its contract. The official estimate of the State Engineer, after the completion of the road, allowed 74,463.4 cubic yards of earth excavation. Had the Construction Company completed its subcontract, Scott and Curlee would have received 40 cents a cubic yard for 36,763.4 cubic yards of earth, or $14,705.36.

Scott and Curlee as principal and the Federal Surety Company as surety gave a bond to the State of Wyoming conditioned for the faithful performance of the principal contract. In its application for such bond, Scott and Curlee assigned to the Federal Surety Company all its right in and under all subcontracts, including the one involved in the instant case.

■ Scott and Curlee brought this action against the Surety Company and the Construction Company for recovery upon the indemnity bond. Scott and Curlee introduced evidence establishing the facts hereinbefore stated. At the close of the plaintiff's case in chief, the Surety Company moved to strike the testimony of Curlee as to the amount of earth moved by the Construction Company, as to the number of working days consumed on the project by the Construction Company up to November 28, 1928, and as to the final amount of yardage of earth moved in completing the contract, on the ground that the same was secondary evidence. This evidence was not challenged by objection or motion to strike at the time it was introduced. The court overruled this motion.

Thereupon the Surety Company moved for a non-suit against Scott and Curlee on the ground that the evidence affirmatively showed that Scott and Curlee was not the real party in interest, that it had breached the subcontract, and that it had failed to comply with the condition of the bond with respect to notice. The court overruled this motion, and the Surety Company stood thereon. Scott and Curlee then moved for a directed verdict in its favor in the sum of $10,000. This motion was granted, judgment entered on the verdict, and the Surety Company has appealed.

■■ The assignment to the Federal Surety Company, above referred to, merely created an equitable lien, in favor of the Federal Company, on the amount due from the Construction Company to Scott and Curlee, to secure the Federal Company against loss under its bond to the state. Massachusetts

Bonding & Ins. Co. v. Kemper (C. C. A. 6) 220 F. 847; Title Guaranty & Surety Co. v. Witmire (C. C. A. 6) 195 F. 41; Lacy v. Maryland Cas. Co. (C. C. A. 4) 32 F.(2d) 48; Duncan v. Guillet, 62 Colo. 220, 161 P. 299.

This being a case at law, under the Conformity Act, § 724, title 28, USCA, it is governed by the practice and procedure obtaining in the State of Colorado. Section 3, Code Civ. Proc. Colo., provides that every action shall be prosecuted in the name of the real party in interest. Under the Colorado decisions, one who holds the legal title is the real party in interest. Koch v. Story, 47 Colo. 335, 107 P. 1093; Bassett v. Inman, 7 Colo. 270, 3 P. 383; Gomer v. Stockdale, 5 Colo. App. 489, 39 P. 355. See, also, Village of Kent v. Dana (C. C. A. 6) 100 F. 56, 64. Since Scott and Curlee held the legal title to the claim here sued on, it was the real party in interest and had the right to maintain this action.

The court did not err in refusing to strike the evidence of Curlee. Counsel for the Surety Company made no objection to the evidence at the time it was offered, but waited until the close of plaintiff's evidence before moving to strike the same. By so doing, they waived their right to object.

Counsel may not withhold objection until he has ascertained whether evidence is helpful or disadvantageous to his case and, if it develops that the evidence is unfavorable, then have it excluded. Farmers' & Traders' Nat. Bank of Covington v. Greene (C. C. A. 6) 74 F. 439; Benson v. United States, 146 U. S. 325, 13 S. Ct. 60, 36 L. Ed. 991.

■ Where secondary evidence is offered and received without objection, it is entitled to the same consideration as if it were legal evidence. Paine v. Wilson (C. C. A. 8) 146 F. 488, 491, 492; Priestley v. Law, 33 N. M. 176, 262 P. 931.

■ The subcontract required Scott and Curlee to pay, between the first and fifth of each month, the bills which the Construction Company incurred on the work, approved, and turned over to Scott and Curlee, and the evidence established that Scott and Curlee had paid all the bills so approved and delivered to it. The bills paid on February 20, 1929, had not been delivered by the Construction Company to Scott and Curlee. It follows therefore that the failure to pay these bills prior to February 20 did not constitute a breach on the part of Scott and Curlee.

■ If the subcontractor, who has agreed to commence work under his contract on a specified date and to complete the same within a stated number of days, commences the work subsequently to the date specified in the contract, the contractor will waive such delay by failing to object thereto and proceeding with the performance of the contract on his part. Jobst v. Danville, 212 Ill. App. 571; Kapailo Mfg. Co. v. Fay, 55 Pa. Super. Ct. 564.

■ A contract of suretyship will be construed to cover only losses or liabilities incurred after the execution of such contract, in the absence of provisions manifesting an intention that it shall cover past transactions. Farrar v. United States, 5 Pet. 373, 389, 8 L. Ed. 159; United States v. Boyd, 40 U. S. (15 Pet.) 187, 207, 10 L. Ed. 706; Bartlett v. Wheeler, 195 Ill. 451, 63 N. E. 169; Stevenson v. Union Indemnity Co., 160 Tenn. 603, 28 S.W.(2d) 346; Schwarze v. New Amsterdam Cas. Co., 136 Okl. 51, 275 P. 640, 642; Warwick v. Hutchinson, 45 N. J. Law, 61; Stoecker v. Thoren, 189 Ill. App. 504; John v. Worthen, 188 Ill. App. 406.

[8] ■ failure of the Construction Company to commence work on the subcontract on August 1, 1928, in our opinion did not constitute a substantial breach of the bond. However, if it did, it was a breach that occurred three days before the execution of the bond and was not covered by the bond.

■ The Construction Company had only used ninety working days up to November 28, 1928, when it suspended work on the project on account of inclement weather conditions. Therefore, at the time the work was suspended, it had not failed to complete the work under the subcontract within 100 working days. Prior to the time that weather conditions permitted work to be resumed, and on January 21, 1929, the Construction Company repudiated and abandoned the subcontract. This was the first breach on the part of the Construction Company, and notice of this breach was given on January 30, 1929, within the ten-day period required by the bond. It follows that timely notice was given of the first breach on the part of the Construction Company.

■ Under the subcontract, Scott and Curlee were obligated to advance money to the Construction Company to pay for hay, grain, labor, and other expenses incurred by the Construction Company under the subcontract. The Construction Company was, of

course, obligated to repay such advances made by Scott and Curlee. While this is not expressly stated, it is clearly an implied provision of the subcontract.

 Scott and Curlee advanced to the Construction Company $19,783.70 on account of expenses incurred by the latter in the work. After deducting therefrom $6,786, due the Construction Company for earth moved by it, there remained a balance due to Scott and Curlee of $12,997.70. Had the Construction Company completed the subcontract, Scott and Curlee would have received $14,705.36 from the State of Wyoming for earth moved by the Construction Company, out of which Scott and Curlee could have reimbursed themselves for such advances. Under the undisputed evidence, the damages exceeded $10,000, and the court properly directed a verdict for that amount in favor of Scott and Curlee.

The judgment is therefore affirmed.