## HOME INDEMNITY CO. v. STATE OF MISSOURI et al.

### No. 10211.

Circuit Court of Appeals, Eighth Circuit.

July 1, 1935.

D. A. Murphy, of Kansas City, Mo. (John T. Harding and R. C. Tucker, both of Kansas City, Mo., on the brief), for appellant.

Gilbert Lamb, of Jefferson City, Mo. (Roy McKittrick, Atty. Gen., and John W. Hoffman, Jr., Asst. Atty. Gen., on the brief), for the State of Missouri et al.

Before STONE, WOODROUGH, and BOOTH, Circuit Judges.

WOODROUGH, Circuit Judge.

This is an action by the state of Missouri upon a surety bond given by the Southern Surety Company, a New York corporation, as principal, and the appel-

lant, Home Indemnity Company, as surety, to qualify the principal to continue to carry on its compensation insurance business in Missouri. The action is for the use and benefit of any and all persons, firms, and corporations entitled to compensation under the Workmen's Compensation Law of the state of Missouri (Mo. St. Ann. § 3299 et seq., p. 8229 et seq.) on policies issued by the Southern Surety Company. The case was tried to the court without the intervention of a jury, and, from a judgment in favor of plaintiff, the surety, Home Indemnity Company, prosecutes this appeal.

On September 11, 1928, the Southern Surety Company of New York was licensed and authorized by the insurance department of the state of Missouri to issue to employers its policies of insurance under the Workmen's Compensation Act. Its certificate of authority was renewed annually on the 1st day of March and remained in full force and effect until March 1, 1932.

In July, 1931, the surety company was notified by the superintendent of insurance of the state of Missouri that, in accordance with section 5935 of the Revised Statutes of Missouri 1929 (Mo. St. Ann. § 5935, p. 4525), known as the "Retaliatory Clause,"[1] the company would be required to furnish a bond or deposit in the same form and amount as had been required by the state of New York of Missouri corporations doing business in the state of New York under the provisions of Workmen's Compensation Act, § 54, chapter 66 of Cahill's Consolidated Laws of New York 1930.[2] Theretofore no such bond had been required from the Southern Surety Company as a condition of its authority to issue compensation policies in Missouri.

To satisfy this request from the Missouri superintendent of insurance, the bond in suit was executed on August 13, 1931, in the same form as was exacted under the laws of the state of New York from foreign corporations doing such business in that state. The form of the bond was supplied by the superintendent, and its provisions are as follows:

"The Home Indemnity Company of New York; Know All Men By These Presents:

"That we, Southern Surety Company of New York, as Principal, and the Home Indemnity Company, as Surety, are held and

---

[1] "§ 5935. *Retaliatory Clause.*

"Whenever the laws of any other state of the United States or of any foreign country shall require of or impose upon companies not organized under the laws of such state or country any further or greater licenses, fees, taxes, deposits or securities, statements or certificates of authority, or require any other duties or acts, or inflict any greater fines or penalties than are by the laws of Missouri imposed or inflicted upon or required of companies not organized under the laws of this state, then it shall be the duty of the superintendent of the insurance department of this state to require from every company of such other state or country, transacting or seeking to transact the business of insurance in this state, the payment of all licenses, fees, taxes, fines or penalties, and the making of all deposits of securities and statements, and the doing of all acts which, by the laws of the state or country in which said company was organized, are in excess of the licenses, fees, taxes, deposits, statements, fines, penalties, acts or duties required by the laws of this state of companies of other states."

[2] Section 54, c. 66, Cahill's Consolidated Laws of New York 1930:

"*Limitation of the Issuance of Policies by a Foreign Insurance Company.* No policy or contract of insurance issued by a foreign stock corporation * * * authorized to transact the business of workmen's compensation insurance in this state, * * * covering or intended to cover the liability of an employer to his employees under this chapter, shall be accepted as a compliance with subdivision two of section fifty of this chapter, unless such foreign stock corporation * * * shall have filed with the superintendent of insurance a bond or undertaking with good and sufficient sureties to the people of the state of New York, and conditioned upon the payment in full of any and all compensation and benefits as provided in this chapter to any and all persons entitled thereto under any such policy or contract of insurance. * * * The amount of such bond shall be such sum as may reasonably represent twenty-five per centum of the outstanding reserves for compensation losses on policies issued by such foreign stock corporation or mutual association upon risks located in the state of New York as determined by law or by the requirements of the superintendent of insurance, provided, however, that the amount of such bond shall in no case be less than twenty-five thousand dollars nor more than one million dollars. Such bonds shall be renewed annually."

firmly bound unto the People of the State of Missouri in the sum of Fifty Thousand and No/100 ($50,000.00) Dollars, for the payment of which sum the said Principal and Surety bind themselves, their successors and assigns, firmly by these presents.

"Whereas, the Principal among other lines of business is engaged in transacting in the State of Missouri the business of Workmen's Compensation as authorized and regulated by the Workmen's Compensation Law of said State; and

"Whereas, by the Laws of the State of Missouri regulating the issuance of policies of Workmen's Compensation Insurance by foreign insurance companies and providing for the security therefor, certain foreign corporations engaged in the business of workmen's compensation are required to file with the Superintendent of Insurance of the State of Missouri a bond or undertaking with good and sufficient sureties to the People of the State of Missouri, and conditioned upon the payment in full of any and all compensation and benefits as provided in the Workmen's Compensation Law to any and all persons entitled thereto under any such policy or contract of insurance that may be issued in connection with the transaction of the business mentioned.

"Now, Therefore, The Condition of This Bond is Such That if the principal shall pay in full any and all compensation and benefits as provided in the Workmen's Compensation Law to any and all persons entitled thereto under any policy or contract of insurance issued by the principal, then this obligation shall be void, otherwise to remain in full force and virtue.

"Provided further, That upon the certificate of the Superintendent of Insurance that there has been default in the payment of compensation for thirty days or that the principal has become insolvent, the Attorney General of the State of Missouri may enforce this bond in the name of the People of the State of Missouri for the benefit of any and all persons entitled to the compensation assured by any policy issued by the principal or otherwise entitled to any benefits under such policy.

"Signed, Sealed and Dated at New York, New York, this 13th day of August, 1931."

Prior to August 13, 1931, the date of the execution of this bond, the Southern Surety Company had issued a large number of policies of compensation insurance to employers in Missouri, which were acceptable under and in conformity with the provisions of the Workmen's Compensation Act of the State of Missouri, and many accidents had occurred and many awards had been made by the Missouri Workmen's Compensation Commission upon claims arising under such policies. On September 17, 1931, the appellant contracted to reinsure all policies of the Southern Surety Company which were in force and effect at midnight September 30, 1931, as to all claims that might arise on liabilities or accidents accruing after that date. The Southern Surety Company thereafter continued its business of writing compensation insurance in Missouri until March 22, 1932, the date of its dissolution in the state of New York. It appears that under the contract of reinsurance the appellant has paid in full all compensation due under policies issued on and after August 13, 1931, the date of the bond here in suit, but that there are unpaid claims and awards under policies issued by the Southern Surety Company prior to that date exceeding in the aggregate the penal sum of the bond.

The trial court held that it was the intention of the parties to said bond that the obligations thereof should apply to compensation on account of accidents to the employees of employers insured by the Southern Surety Company under policies issued prior as well as subsequent to the date of the execution of the bond in suit. It also held that the "Retaliatory Clause" of the Missouri Statutes was constitutional. By appropriate assignments, the same issues are presented upon appeal.

The bond upon which this suit was brought was executed to comply in form and substance with the provisions of the New York statute, set out in the footnote, governing the rights of foreign insurance corporations doing business in New York. Under the "Retaliatory Clause" of the Missouri statutes, supra, New York corporations "transacting or seeking to transact" an insurance business in Missouri are subject to all the requirements exacted of foreign corporations doing a similar business under the statutes of New York. The scope of the surety's obligation under such a statutory bond is prescribed by the statute in compliance with which it is given and by the language employed in the bond defining it. Zellars v. National Surety Co., 210 Mo. 86, 108 S. W. 548; Fogarty v. Davis, 305 Mo. 288, 264 S. W. 879; Jones &

Son v. Columbia Casualty Co. (C. C. A. 9) 73 F.(2d) 449; Bunker v. United States Fidelity & Guaranty Co. (C. C. A. 10) 72 F.(2d) 899; Niagara Fire Insurance Co. v. Pospisil (C. C. A. 8) 52 F.(2d) 709, 79 A. L. R. 404; Compagnie Generale Transatlantique v. American Tobacco Co. (C. C. A. 2) 31 F.(2d) 663; Crawford v. Ozark Ins. Co., 97 Ark. 549, 134 S. W. 951, 952.

The statute, under the terms of which this bond was given, provides: "No policy or contract of insurance issued by a foreign stock corporation * * * covering or intended to cover the liability of an employer to his employees * * * shall be accepted * * * unless such foreign stock corporation * * * shall have filed with the superintendent of insurance a bond or undertaking with good and sufficient sureties * * * conditioned upon the payment in full of any and all compensation and benefits * * * under any such policy or contract of insurance." Section 54.

A careful reading of the statute satisfies that its provisions were intended to operate prospectively. It is an elemental rule of construction that a statute ought not to be construed to operate retrospectively in the absence of clear, strong, and imperative language commanding it. United States v. Heth, 3 Cranch, 399, 413, 2 L. Ed. 479; Shwab v. Doyle, 258 U. S. 529, 42 S. Ct. 391, 66 L. Ed. 747, 26 A. L. R. 1454; United States v. Magnolia Petroleum Co., 276 U. S. 160, 162, 48 S. Ct. 236, 72 L. Ed. 509; Flint v. Stone Tracy Co., 220 U. S. 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312; Brewster v. Gage, 280 U. S. 327, 50 S. Ct. 115, 74 L. Ed. 457; Jones v. Fidelity & Columbia Trust Co. (C. C. A. 6) 73 F.(2d) 446; Big Diamond Mills Co. v. United States (C. C. A. 8) 51 F.(2d) 721.

It is contended for the state that the provision of the statute that the amount of the bond shall be "equal to twenty-five per centum of the [company's] outstanding reserves for compensation losses on policies issued" indicates an intention that the statute should operate retrospectively. The language referred to relates solely to the mode of determining the amount of the bond, and "a statute is not retroactive merely because it draws upon antecedent facts for its operation." Lewis v. Fidelity & Deposit Co. of Md., 292 U. S. 559, 54 S. Ct. 848, 853, 79 L. Ed. 1425, 92 A. L. R. 794.

The terms of the bond reflect no intention on the part of the surety named therein to assume any obligation broader than required by the statute under which the bond was drafted, and the recitals are conformable with the intention of the parties to cover only "any such policy or contract of insurance that may be issued in connection with the transaction of the business mentioned."

It is a well-recognized canon that a contract of suretyship will not be construed to be retrospective in operation, in the absence of plain language manifesting the assumption of such an obligation. Jones & Son v. Columbia Casualty Co. (C. C. A. 9) 73 F.(2d) 449; American Surety Co. v. Scott (C. C. A. 10) 63 F.(2d) 961, 964; Farrar v. United States, 5 Pet. 373, 8 L. Ed. 159; United States v. Boyd, 15 Pet. (40 U. S.) 187, 207, 10 L. Ed. 706; Meyers v. Block, 120 U. S. 206, 214, 7 S. Ct. 525, 30 L. Ed. 642; Bartlett v. Wheeler, 195 Ill. 445, 63 N. E. 169; Stevenson v. Union Indemnity Co., 160 Tenn. 603, 28 S.W.(2d) 346; Schwarze v. New Amsterdam Casualty Co., 136 Okl. 51, 275 P. 640; United States Fidelity & Guar. Co. v. Fultz, 76 Ark. 410, 89 S. W. 93; Stearns on Suretyship (3d Ed.) § 129; 21 R. C. L. § 29, p. 979; 50 Corpus Juris, § 138, p. 86.

The language employed in the bond defining the obligation of the surety satisfies that the appellant did not consent to be bound upon claims and awards which arose under policies of compensation insurance antedating the bond. We need not consider the other question argued.

The judgment should be reversed, and it is so ordered.

Reversed.