DIFFIE v. ANDERSON.

Opinion delivered January 20, 1919.

1. GUARDIAN AND WARD — SETTLEMENT — FRAUDULENT ALLOWANCE.— Where a guardian credited himself in his settlement with board furnished his wards by him prior to his qualification as guardian, though claim therefor was not made until two years after such qualification, and where the charge absorbed all of a legacy inherited by the wards and collected by the guardian, the allowance of a charge was a fraud, under Kirby's Dig., § 3792, and will be surcharged in equity.

2. COURTS—VALIDITY OF ORDER MADE AFTER ADJOURNMENT.—After an order adjourning court until ensuing term was made, and the record signed, an order releasing sureties on a guardian's bond made after such adjournment and before the ensuing term was regularly opened was of no effect, and sureties continued liable on such bond.

3. GUARDIAN AND WARD — CONVERSION — LIABILITY OF SURETIES.— Where a guardian converted before discharge of bond, which was in effect at time, funds coming to his hands, and action therefor was brought after another bond had been executed, the sureties on both bonds were liable.

4. GUARDIAN AND WARD—COSURETIES.—Where a guardian converted his ward's funds prior to discharge of the sureties on old bond, and an action to recover converted funds was brought after execution of a new bond, the breach being continuing, the sureties on the new bond were equally liable with those on the discharged bond, and the sureties on both bonds were cosureties and under obligation to equalize their burden.

5. GUARDIAN AND WARD—LIABILITY ON BOND—DISCHARGED SURETY.— Where a surety on a guardian's bond, upon being assured that the bond was discharged and a new bond executed, repaid to the guardian a loan made to secure such surety against liability on such bond but in fact the bond was not discharged and the surety became liable on the new bond for converted funds, the sureties on the new bond will be held liable primarily to extent of amount so paid.

Appeal from Ouachita Chancery Court; *Jas. M. Barker,* Chancellor; reversed.

STATEMENT OF FACTS.

In April, 1906, S. W. Anderson married Mrs. Roxie Wilson, a widow with two children, the oldest a girl named Lena, then about six or seven years old, the other a boy named Junius, who was then about four years of

age. These children lived with Anderson for about six years, when they left him to live with their grandmother. Mrs. Wilson was the guardian of her children at the time of her marriage, and had filed a settlement as guardian in which it was shown that she had no funds in her hands belonging to her wards. In 1907 she obtained an order to sell a tract of land which the children had inherited from their father for the purpose of their support and maintenance, and the proceeds of this sale amounted to $800. Without any order of the court Anderson took charge of this money and used and invested it. He first bought a gin which he sold after having operated it for one season, and with the money thus obtained he bought two lots, the title to which he took in the name of his wife. One R. J. Tate, a relative of the children, died leaving a will under which he gave the children $500. Thereafter Anderson became the guardian of the children, and, as such, collected the legacy. His bond as guardian was signed by J. H. Parker and R. T. Lockett, and to induce Parker to sign the bond Anderson agreed to loan him the $500 at 6 per cent. interest. The date of the guardian's bond was September 16, 1912.

On January 5, 1914, the guardian filed a settlement in which he charged himself with an item of $240 for rent of the two lots and the $500 legacy; but he did not charge himself with any interest on this legacy. He credited himself with $864 for board of both children for 72 months at the rate of $6 each per month, thus bringing each child out in debt $62. At the time of filing this settlement the guardian also filed a new bond, and in the matter of its approval the following order was entered on January 29, 1914, which was the second day of the January, 1914, term of the probate court:

"Minor Heirs of W. F. Wilson, Dec'd.

"S. W. Anderson, Guardian.

"New Bond for Approval.

"On this 5th day of January, A. D. 1914, come John H. Parker and R. T. Lockett and move the court to re-

lease and relieve them from any further liability as sureties on the bond of S. W. Anderson, guardian of Lena and Junius Wilson, minor heirs of W. T. Wilson, deceased, said bond having been made in the sum of $500 and approved September 16, 1912, which approval is a matter of record Book 'G,' page 481, and for cause said bond is set aside, annulled and held for naught and J. H. Parker and R. T. Lockett, sureties thereon, are hereby released, relieved and discharged from any further liability thereon, and now comes S. W. Anderson, heretofore appointed guardian of Lena and Junius Wilson, minor heirs of the said W. F. Wilson, deceased, and presents to the court his bond, executed 5th day of January, A. D. 1914, in the sum of $1,480 with J. W. Scott, B. M. Tribble, W. R. Cubage and W. C. Beavers, sureties, and said bond being conditioned according to law, and the court being of opinion that the sureties thereon are good and sufficient, and the said Anderson being a proper person to act as guardian as aforesaid said bond is by the court approved and confirmed.''

Although the order releasing the sureties on the first bond was entered on the record of the proceedings of the second day of the January term (January 29th), it is insisted that the order was in fact made on January 5, 1914. It appears, however, that on December 12, 1913, an order was entered adjourning the court until court in course and the record was duly signed by the judge. The next order of the court was the opening order of the January, 1914, term of the court and was made on Monday, January 19, 1914, which was the day fixed by law for convening that term of court, and the court was adjourned to January 29th, when the order set out above was entered. The judge who had presided on December 12th testified that he did not adjourn the court on that date; that he never adjourned his court but left it continuously open and the clerk had entered the adjourning order without authority. No attempt was made, however, to set aside this adjourning order as having been erroneously made and it still appears as one of the orders

of court. The settlement of the guardian charging his wards with board was ordered to lie over for exceptions, and no exceptions having been filed it was approved at the following term of the court.

Thereafter, on Janury 23, 1918, this suit was filed by J. A. Diffie, as guardian of Junius Wilson, who was still a minor, and by his sister Lena, who had come of age, to surcharge and falsify the account of Anderson as guardian, it being therein alleged that the allowance to Anderson of his claim for board was a fraud on the court.

On the trial of this cause conflicting testimony was presented as to the labor done and services performed by the children, and while the testimony does not show that they did enough work to earn their board and their necessary expenses, it does show that they lived with Anderson as members of his family and did such work as children of their age were capable of doing—and this was of a valuable character, as both the boy and girl worked in the field and did work around the house. Anderson testified that he intended to charge the children with their board and told their mother he would do so; but no account for board was ever presented during the time the mother was the guardian, and Anderson himself did not qualify as guardian until after he was advised that the children had been left the legacy of $500.

Parker testified that in 1914 Anderson told him that he wanted the $500 he had loaned him, and he expressed his readiness to repay the loan whenever a new guardian's bond was filed, thereby releasing him from liability on the old bond.

Parker talked with both the judge of the court and the clerk thereof and was told by both of these officers that the new bond had been filed and approved, the approval having been made by the judge on January 5th. Thereupon a settlement was made between Anderson and Parker on January 7, 1914, according to which Parker owed $67.50 interest on the $500 loan, and with this money Parker paid a note of Anderson's on which he was surety at the Camden National Bank amounting to

$63, and deposited the balance amounting to $504.50 in the bank to the credit of Anderson. Parker made this payment under the belief that the old bond had been discharged by the execution and approval of the new one.

No order had ever been made directing Anderson to loan this $500, and no order of the court had ever been made authorizing the charge for board, and the time for which the board was charged was prior to the appointment of Anderson as guardian. In fact, the court had made no order in regard to this estate prior to the filing of the guardian's settlement.

On January 12, 1914, Anderson appears to have paid out about all of this $504.50 for his own personal uses. The two sets of sureties filed separate answers, and while each set contends that the approval of the guardian's settlement is conclusive of the matter there contained each set says that the liability, if any does exist, should be charged against the other. The court dismissed the complaint for want of equity, and this appeal has been duly prosecuted.

*Powell & Smead,* for appellant.

1. The charge for board by Anderson against his wards was made without a previous order of court and was for a period before he was appointed guardian, and he is not entitled to same. 21 Cyc. 70; 3 Har. & J. (Md.) 251; 9 N. W. 433.

2. A guardian shall not be allowed more than the income from his ward's estate for maintenance and education, unless so directed by the probate court. Kirby's Digest, Sec. 3792; 63 Ark. 450; 126 Ark. 579.

3. The wards performed services for the guardian sufficient to pay for their board. If this were not true it was his duty to have found them a place where they could earn it. 63 Ark. 450.

4. Anderson did not intend to charge board at the time it was furnished. The charge was an afterthought.

5. No part of the amount shown by the inventory was income from the estate of the wards. It was prop-

erty which should have been held by the mother of the infants, who was their guardian. That part of the income from a ward's estate which is not expended during the year collected, becomes principal at the beginning of the following year. 4 B. Mon. (Ky.) 313; 6 B. Mon. (Ky.) 292; 20 S. W. 508.

6. The sureties on both bonds are liable. The liability on a guardian's bond is a continuing one and the surety is liable no matter whether the default occurred before or after the bond was executed. 51 Ark. 232.

*Gaughan & Sifford,* for appellee.

1. This being a suit in equity to falsify and surcharge a guardian's settlement, the chancery court can only take jurisdiction upon the ground of fraud or some other well recognized ground of equity jurisdiction. 77 Ark. 351; 40 Ark. 219; 92 Ark. 41; 121 Ark. 335. There was no fraud here. The most that can be said is that the charge for board was illegal, but the remedy in such case is by appeal within the proper time. 92 Ark. 44.

2. The question as to whether board was charged for a period before the appointment of defendant as guardian is concluded by the judgment of the probate court confirming the settlement. A charge for support in such a case is properly allowable. 20 N. W. 366.

3. The services of the minors were of no value to the guardian because of their youth.

4. The sum of $240 certainly represents income from the estate. This amount was collected as rents from time to time and possibly the sale of a steer. The settlement merely represents a summary of these items. There is no showing that all the income collected for each year was not expended during that year; therefore this sum could not under the rule contended for by appellant become principal.

5. The sale of the wards' lands by order of probate court was authority for the guardian to invade the estate of the minors for their support, education and maintenance.

6. The sureties on the first bond are not liable. The recital of the adjourning order of the court to court in course made by the clerk was a misprison, and the first sureties were properly relieved before the money was appropriated.

7. If any liability exists against the guardian, the bondsmen on the second bond alone are liable, as the bond could be and as appears from the court's recitals was, approved in vacation. 53 Ark. 37; 63 Ark. 218; 112 Ark. 71.

*Powell & Smead,* for appellant, in reply.

The proceeds of the sale of the lands by the former guardian for their support and education could only have been expended by that guardian upon order of the probate court. Sec. 3792, Kirby's Digest. This was not done. Appellee assuredly could not later have himself appointed as guardian and invade this fund by charging his wards for board accrued during the period of the guardianship of another.

SMITH, J., (after stating the facts). We think the court should not have dismissed the complaint but, on the contrary, should have surcharged the account and should have held that a fraud in law had been committed in the allowance of the charge for board. The facts are substantially identical with those of the case of *Thomas* v. *Thomas,* 126 Ark. 579. The court there applied Section 3792 of Kirby's Digest, which provides that the guardian shall not be allowed more than the clear income of the estate for the maintenance and education of the ward unless the expenditure is directed by the probate court, and we there approved the construction given this statute in the case of *Campbell* v. *Clark,* 63 Ark. 450, where it was said:

"The language of this statute could not well be made stronger than it is, and we are of the opinion that it was intended to be, and is, mandatory. This statute, in our opinion, takes from the probate court the discretion to approve the expenditures of a guardian for the main-

tenance and education of his ward, so far as they exceed the income of the ward's estate, unless such expenditures have been made under the direction of the court.'' It was also said in that case that if the guardian obtained credits in his final settlement for sums which he had not expended for the benefit of his ward, it would be such a fraud as would warrant a court of chancery in restating and correcting such settlement.

In the instant case Anderson filed no claim for board with his wife while she was guardian and that entire charge made accrued before he became the guardian. Indeed, the claim was not made until more than two years after his qualification as guardian, and when made it had the effect of absorbing the estate of both the boy and the girl except their interest in the lots the title to which, as stated, was outstanding in the name of their mother. These facts make peculiarly applicable the language of this court in the case of *Thomas* v. *Thomas, supra,* where, in the application of the doctrine of the case of *Campbell* v. *Clark* to the facts of the Thomas case, we said:

''The undisputed evidence in this case shows that the guardian collected $203.35 from the estate of appellant and that he took credit for $160 for board, clothing, etc., which he had not expended for appellant out of the money so collected. This credit for board and clothing covered a period almost entirely prior to his appointment as guardian for his son. At that time appellant was living at home with his father in the relationship of parent and child; the father had no intention whatever of charging his son any board for the years 1902, 1903, 1904 and 1905. The charge was clearly an afterthought and had the effect of absorbing the entire estate of the boy. This could not be done without first obtaining an order from the probate court. It was clearly a fraud in the law which courts of chancery will recognize.''

So far as the wards are concerned we are of the opinion that both sets of the sureties are liable for the sum with which the guardian charged himself in his settlement. No day of court intervened between December

12th—when the court adjourned until court in course—January 19th — when the ensuing term was regularly opened—and no order of the court could have been made on January 5th releasing the sureties on the first bond from liability.

A similar question was presented in the recent case of *State ex rel. Hall* v. *Canal Construction Co.,* 134 Ark. 447, 203 S. W. 704. On the 5th day of October the county court of Poinsett County made an order adjourning until October 28th. The judge convened the court on October 26th and made an order the validity of which became of controlling importance. In holding the order of October 26th void we said:

"When the court adjourned to a day certain all persons interested had the right to remain away until the day fixed by the court to convene again, and the judge could not before that day arrived convene the court and proceed with the dispatch of the cases and other matters pending therein. The fact that by a statute in this State courts must be held at fixed times and places raises the implication that courts cannot assume a vagrant character and hold their sessions at other times or places than those provided by law. *Mell* v. *State,* 133 Ark. 197, 202 S. W. 33. The presiding judge had no right to convene the court on the 26th day of October, after having adjourned it to a fixed day which was later in point of time. Therefore the order entered upon the record of October 26, 1914, was made in vacation, and furnished no basis for an additional assessment of the land that was within the district."

Parker's demand of Anderson having been made on January 7th, a day prior to the discharge of the first bond, and the conversion having also occurred prior to the discharge of this bond, it follows that the sureties on both bonds are liable to the wards for the money so converted. *Dugger* v. *Wright,* 51 Ark. 232. But these sureties, being liable to the same person for the same debt, are co-sureties and as such, between themselves,

are under the obligation to equalize their common burden. *Dugger* v. *Wright, supra.*

The majority of the court are, therefore, of the opinion that, inasmuch as it was the purpose of the sureties who executed the second bond to thereby release the sureties on the first bond from liability and Parker paid over the sum of $504.50 only when assured that the second bond had been approved and the first discharged, it is considered equitable that this intent should be given effect by holding the sureties on the second bond primarily liable for this $504.50 paid to Anderson by Parker on January 7th. But the conversion of the $240 item occurred during the life of the first bond, as did also the $63 interest on the $500 loan, which was used in paying Anderson's individual note at the bank, and the sureties on the first bond will, therefore, be held primarily liable for these two items.

The decree of the court below will be reversed with directions to enter a decree in accordance with this opinion.