## MITCHELL, Respondent, v. COLUMBIA CASUALTY CO., APPELLANT.

(No. 8,081.)

(Submitted September 27, 1940.   Decided October 5, 1940.)

[106 Pac. (2d) 344.]

*Mr. Howard Toole* and *Mr. W. T. Boone,* for Appellant, submitted a brief; *Mr. Boone* argued the cause orally.

*Mr. Edwin T. Irvine,* for Respondent, submitted a brief, and argued the cause orally.

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

The defendant Columbia Casualty Company appeals from that part of a judgment of $1,000 in excess of $600, for which it offered to allow judgment to be taken against it.

The facts are that Harold Mitchell was appointed guardian of the person and estate of his son Merle Mitchell, and acted as such from his qualification on January 14, 1931, until suspended by court order on February 2, 1938. On July 29, 1938, a final order and decree was entered removing him as guardian, sustaining objections to the fifth annual account, finding that he was indebted to his ward's estate in the amount of $1,060.18, and appointing the present guardian.

In the decree the court found that from August 1, 1929, to July 1, 1938, a period of 107 months, the guardian had occupied residence property of which he and his ward owned an undivided one-half interest; that the rental value of the ward's interest was $10 per month; that the guardian had not accounted for rent except the sum of $27.30 and was therefore indebted to the estate for rent in the sum of $1,042.70; that by reason of this and other items not here in question his total indebtedness to the estate was $1,060.18.

Defendant has been the surety of the defaulting guardian since February 3, 1933; prior to that date two other bonding companies had successively been sureties—the first from his qualification on January 14, 1931, to December 15, 1931, and the second from the latter date to the approval of defendant's bond. The amount of each bond was $1,000.

In his complaint the minor by his present guardian alleged all of these facts except those relative to the two prior sureties, and sought to recover from the defendant the entire amount of $1,060.18. Defendant admitted the facts pleaded and ad-

mitted that it was indebted to plaintiff in the sum of $600 and costs, for which it offered to let judgment be taken against it.

Plaintiff offered no evidence at the trial but rested his case upon the pleadings. Defendant offered in evidence only the two petitions and the two orders for the substitution of the second and third sureties in the guardianship matter.

The specifications of error are that the court erred in making the conclusion of law that the defendant was liable in the liquidation of the judgment against the former guardian for the entire sum of $1,000 and costs, and in rendering judgment accordingly.

The $600 offered by defendant is for rent at $10 per month for the five-year period from February 3, 1933, to February 2, 1938, during which the guardian was acting under the surety bond furnished by defendant. The question is whether the defendant is liable only for the rent accruing during the five-year period or whether in addition it is liable for that accruing during the period from August 1, 1929, to the qualification of the guardian on January 14, 1931, and the period from January 14, 1931, to February 3, 1933, during which others were sureties, and the period from the guardian's suspension on February 2, 1938, to July 1, 1938, when he was ordered removed. Since the condition of the bond is that the guardian "shall faithfully execute the duties of his trust" and since it was approved and ordered filed as the guardian's bond "from and after" February 3, 1933, defendant's contention is that it covers only items accruing after that date and during the continuance of the guardian's authority.

It is well settled in Montana that a surety on a guardian's ▮ or administrator's bond is concluded by the settlement of a final account of the fiduciary, even if not a party to the proceeding or actually notified of it. (*Botkin* v. *Kleinschmidt*, 21 Mont. 1, 52 Pac. 563, 69 Am. St. Rep. 641; *Kenck* v. *Parchen*, 22 Mont. 519, 57 Pac. 94, 74 Am. St. Rep. 625; *Baker* v. *Hanson*, 72 Mont. 22, 231 Pac. 902; *Swanberg* v. *National Surety Co.*, 86 Mont. 340, 283 Pac. 761; *Oliveri* v. *Maroncelli*, 94 Mont. ▮ 476, 22 Pac. (2d) 1054.) Defendant does not question the

law in that respect, but contends that it became responsible only for the guardian's defaults first accruing after the effective date of the bond.

The question is one of first impression in Montana, although the appellants relies upon some words used by this court in *McCauley* v. *American Surety Co.*, 81 Mont. 161, 263 Pac. 90, 92, in the nature of a *dictum* or at least in the nature of too wide a generalization which would seem to cover this case though not the case in which it was pronounced. On the facts that case was the reverse of this, in that the controversy concerned liability under a former bond claimed to have been released, rather than under a substituted bond. The defendant contended that the default had occurred after the release of its bond. The court said: "While it is true that the surety is liable only for the money or property that actually came into the hands of the guardian during the term covered by the bond * * * in this case the default of the guardian was settled by the order settling her final accounts, and the surety was liable on the bond unless the default occurred subsequent to the date of the release, and the burden was not on the plaintiff to establish that the default occurred prior to the release, but to complete its defense of release, the burden was on the surety to show that the funds were not misappropriated during the time the bond was in force." Although the first part of this statement would seem to include the idea that the surety would not be liable for defaults first accruing *prior to the effective date* of its bond, the court was actually considering a case in which it was contended that the defaults first occurred *after the release* of the bond. Therefore in spite of its language, the *McCauley Case* cannot be considered as upholding the appellant's contention.

The courts are hopelessly in conflict upon the question, due largely to variations in the applicable statutes or in the wording of the bonds. (See 28 C. J. 1289, 1290 and 1292, 1293, secs. 486 and 492; 12 R. C. L. 1161, 1162, sec. 51; 25 Am. Jur. 116, sec. 190.) Some cases hold that the surety is not liable on a guardian's bond unless, after the effective date of the bond,

the property both (1) came into or still was in the guardian's hands and (2) was converted by him; but it is stated by the last cited text that "in a great majority of the cases, sureties on a 'new' bond of a guardian, given to relieve prior sureties of future or all liability, are held to be liable for the amount of a defalcation or deficit occurring before the giving of the bond."

It seems also to be generally agreed that the first surety is liable for a debt owed the ward by the guardian before the appointment if the latter is then solvent (28 C. J. 1290, sec. 487); and some courts hold the sureties on a substituted bond liable for prior defaults on a somewhat analogous theory of continuing breach (28 C. J. 1293, sec. 492; *Diffie* v. *Anderson,* 137 Ark. 151, 208 S. W. 428), or on the guardian's duty faithfully to discharge his trust according to law, make a true account, and upon final settlement pay over the amount due. (4 Bancroft's Probate Practice, 2293, sec. 1420; *Owens* v. *McMahan,* 122 Wash. 191, 210 Pac. 200; *Southern Surety Co.* v. *Burney,* 34 Okl. 552, 126 Pac. 748, 43 L. R. A. (n. s.) 308; note, 4 Ann. Cas. 345.) No suggestion is made in this case that the guardian was insolvent when defendant became his surety and that by reason thereof the rent already accrued could not have been collected. Therefore the question suggested by the first citation in this paragraph is not here present.

Both grounds seem to compel the conclusion that the defendant is liable for the guardian's rent becoming due prior to his appointment as guardian and during the entire period in which he exercised the guardian's responsibilities, both before and after the effective date of the bond. While the rent became due from month to month, there can be no doubt (1) that at the time of his appointment it was his duty as guardian to collect from himself the rent then accrued, (2) that at the time defendant's bond became effective it was still his duty as guardian to collect from himself all the accumulated rent then accrued, (3) that at all times until his powers were suspended by the court it was his continuing duty as guardian to collect from himself all of the accumulated rent then accrued (sec. 10418, Rev. Codes), and (4) that he will not be entitled to his discharge

until upon completion of his administration he has paid over all accumulated sums of money due from him (sec. 10332, Id.).

Here the condition of the bond is that the guardian "shall faithfully execute the duties of his trust according to law." Section 10408, Revised Codes, provides that the bond shall be so conditioned and that "the following conditions shall form a part of such bond without being expressed therein: * * * at the expiration of his trust to settle his accounts * * * and to pay over and deliver all the estate, moneys, and effects remaining in his hands, or due from him on such settlement," etc.

Only a prospective effect is given the bond by holding that its condition has not been performed unless the guardian has paid "all the estate, moneys, and effects * * * due from him" on the final account, whether they first became due to the estate before or after his appointment and qualification, or before or after the effective date of the bond in question.

It may be suggested that after his suspension by the court he still owed a personal obligation to pay rent for further occupancy of the property, but that he had neither an obligation nor a power as guardian to collect rent, either from himself or anyone else; that defendant was surety, not for his personal obligations, but only for his fiduciary ones; that therefore it may be seriously doubted whether the defendant is liable for the rent accruing after the suspension of the guardian's powers on February 2, 1938. But as such rent amounted only to approximately $50, and as its deduction from the balance found owing to the estate by the guardian would still leave an amount in excess of the $1,000 penalty of the bond, a determination of that question is not necessary to the disposition of this appeal and would therefore constitute *dictum*.

The judgment appealed from is affirmed.

ASSOCIATE JUSTICES MORRIS, ANGSTMAN, ERICKSON and ARNOLD concur.