IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 31, 2003

IN RE: *Gertrude K. Torbert, Deceased.*

## RICHARD MANSON, ET AL. v. ANTHONY L. GOSS, ET AL.

**Appeal from the Probate Court for Davidson County**
**No. 99458     Frank G. Clement, Jr., Judge**

---

**No. M2000-03206-COA-R3-CV - Filed April 15, 2003**

---

This appeal concerns Western Surety Company's liability on a bond it executed with Anthony Goss. The trial court entered judgment against Western Surety Company on the bond. This Court affirms the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

Luther Wright, Jr. and Keli Jean Stewart, Nashville, Tennessee, for the appellant, Western Surety Company.

Suzette Peyton, Nashville, Tennessee, for the appellee, Richard Manson, Administrator Estate of Gertrude K. Torbert.

## OPINION

Gertrude K. Torbert passed away on June 10, 1992, at the age of 85. Anthony Goss had been living with Ms. Torbert since October of 1989. Since January of 1992, Lisa Haguewood also lived with the decedent. The day after Ms. Torbert died Mr. Goss caused Ms. Torbert's estate to be opened, proposing, as her Last Will and Testament, a writing allegedly executed on January 30, 1992. That writing nominated Mr. Goss as executor of the estate. Almost immediately upon the opening of the estate in probate court, certain of the decedent's heirs at law formally contested the will proposed by Mr. Goss.     The contest resulted in the removal of Mr. Goss as executor by default judgment. By the time of the entry of that default judgment, Mr. Goss had absconded to parts unknown. The substitute administrator C.T.A. eventually pursued an action against Mr. Goss for fraud and conversion. The appellant filed its petition to be relieved of its obligation under the bond. The estate then amended its complaint to include Western Surety as a party defendant. The trial

court entertained evidence by stipulation and argument by brief, after the consideration of which the court entered a judgment adverse to Western Surety for the entire amount of the bond. In its final judgment the probate court found the following:

This cause came on to be heard on the 18th of October, 2000 before the Honorable Frank Clement, Jr., Seventh Circuit Judge, pursuant to the Judgment of this Court entered July 7, 1999 in favor of plaintiff Richard Manson in his capacity as Administrator of the Estate of Gertrude K. Torbert and against defendant Anthony L. Goss. The purpose of this hearing was to determine:

1. Damages due and owing the estate from defendant Anthony L. Goss for his failure faithfully to discharge the duties of his office of Executor;

2. The amount of such damages chargeable on the bond of defendant Western Surety Company and payable by Western Surety Company to the estate for the failure of defendant Anthony L. Goss faithfully to discharge the duties of his office of Executor; and

3. Damages due and owing Western Surety on its counter-complaint against counter-defendant Anthony L. Goss as a result of any liability imposed on Western Surety Company in its capacity as surety on the executor's bond.

Present at the hearing were Suzette Peyton on behalf of Richard Manson, Elmer Davies on behalf of the beneficiaries of the estate and Luther Wright on behalf of Western Surety Company. By prior agreement among the parties, evidence was submitted by affidavit and included all Court records of any nature previously filed in this estate. Based upon argument of counsel in open Court, evidence submitted, and the files and records in this cause, the Court determined as follows:

1. The evidence showed that defendant Anthony L. Goss failed to file an accurate inventory pursuant to *Tenn.Code Ann.* § 30-2-301 in that he failed to report $9,460.20 of funds belonging to the estate in the inventory filed August 26, 1992. Defendant Anthony L. Goss is liable to the estate for such amount pursuant to *Tenn.Code Ann.* § 30-2-608 and as surety, defendant Western Surety is also liable to the estate for such amounts. The parties agreed to the calculation of the amount of funds that were under reported.

2. Including the $9,640.20 in estate funds that were not reported in the inventory, the evidence showed that defendant Anthony L. Goss failed to account to the Court for $136,787.33. The inventory filed by defendant Anthony L. Goss on August 26, 1992 reported money on deposit in the amount of $122,299.72 and stocks and bonds totaling $66,175.75, which together total $188,475.47. Following the disappearance of defendant Anthony L. Goss the current administrator recovered estate funds in the amount of $61,148.34 in money and bonds. The balance of unrecovered estate funds is calculated as follows:

| | |
|---|---|
| Money on deposit | $122,299.72 |
| Stocks and bonds | $ 66,175.75 |
| Underreported | $ 9,460.20 |

in inventory

| | |
|---|---|
| *Total* | *$197,935.67* |
| Recovered | $ 61,148.34 |
| **Balance** | **$136,787.33** |

3. Western Surety Company asserted that the full $136,787.33 should not be chargeable on the bond, claiming that the surety's obligation should extend only to funds misappropriated by defendant Anthony L. Goss after issuance of the bond. The Court was of the opinion and determined that pursuant to *Tenn.Code Ann.* § 30-2-601 defendant Anthony L. Goss was obligated at the time the bond was in place to account to the estate for the entire amount, $136,787.33. The Court noted that defendant Anthony L. Goss was entrusted with these funds and they are now gone from the estate. For defendant Anthony L. Goss's failure to account for the funds, both he and his surety, defendant Western Surety Company, are liable to the estate for $136,787.33.

4. The evidence showed that within two months prior to the death of the decedent, defendant Anthony L. Goss misappropriated funds belonging to the estate in the amount of $35,700.56. The parties did not dispute the calculation of the amount that was misappropriated prior to decedent's death. Defendant Western Surety Company claimed that the amount was not chargeable on the bond because the funds were wrongfully taken prior to the death of the decedent and prior to issuance of the bond.

5. The Court was of the opinion that on the date the bond was issued, the funds that had been misappropriated by defendant Anthony L. Goss prior to the death of the decedent were part of the estate, held in trust by defendant Anthony L. Goss on behalf of the estate, notwithstanding the manner in which defendant Anthony L. Goss held the funds.

A. *Tenn.Code Ann.* §§ 30-1-310 and 30-3-104 which oblige a fiduciary to take possession of all assets and bring suit to obtain estate assets; and

B. *State of Tennessee ex rel. Teague v. Home Indemnity Company*, 442 S.W.2d 276 (Tenn.App. 1967) which held the surety liable under analogous circumstances wherein an executor had misappropriated funds from an elderly and infirm decedent prior to death under pernicious circumstances.

6. The Court was of the opinion that the surety was liable both for funds that were misappropriated prior to the decedent's death ($35,700.56) and for those misappropriated after her death ($136,787.33) because defendant Anthony L. Goss's failure to account to the Court for these funds constituted a breach of the duties of the executor that occurred while the bond was in place.

7. The Court was of the opinion that the amount of the claim for misappropriated and unaccounted estate funds constituted a liquidated amount and for that reason determined that prejudgment interest in the amount of 7% per annum was appropriate. The Court's determination in this

regard was based upon *Tenn.Code Ann.* § 47-14-123 and upon the common law principle set forth in *Pritchard on Wills*, 4th Ed. (1983) V. II, § 718, p. 285 that when a personal representative uses estate money for himself, he will be charged with interest.

8. The Court determined that such interest is chargeable against the bond as of the date the bond was issued.

9. The Court was of the opinion that accountant fees in this estate would have been $1000.00 without the misdeeds of defendant Anthony L. Goss, and on that basis, the Court determined and the evidence supported that both defendants are liable to the estate for accountant fees in the amount of $$4,396.25.

10. The Court was of the opinion that administrator and attorney fees in this matter would have been $6000.00 without the misdeeds of defendant Anthony L. Goss, and on that basis, the Court determined ant the evidence supported that both defendants are liable to the estate for attorney fees in the amount of $38,395.32.

11. The Court was of the opinion that court costs in this matter would have been $350.00 without the misdeeds of defendant Anthony L. Goss, and on that basis, the Court determined that both defendants are liable to the estate for court costs in the amount of $919.29.

12. The Court was of the opinion that the summons expenses were reasonable and necessary expenditures of the estate caused by the misdeeds of Anthony L. Goss and on that basis determined that both defendants are liable to the estate for those amounts.

13. The Court expressly stated that no bad faith had been evidenced on the part of Western Surety Company.

14. The damages are calculated as follows:

| | | |
|---|---|---|
| **I. UNACCOUNTED INVENTORY FUNDS** | | $ 136,787.33 |
| | | |
| **II. PREDEATH CONVERSION OF FUNDS** | | $ 35,700.56 |
| | | |
| *TOTAL* | | **$ 172,487.89** |
| | | |
| **III. PREJUDGMENT INTEREST** | | |
| | | |
| Annually at 7% | 0.07 | $ 12,074.15 |

| | | |
|---|---|---|
| June 18, 1993 - June 17, 2000 | 7 | $ 84,519.07 |
| Daily at 7% | 365 | $ 33.08 |
| June 18, 2000 - October 18, 2000 | 123 | $ 4,068.82 |
| | | |
| *TOTAL INTEREST JUNE 18, 1993 - OCT. 18, 2000* | | **$ 88,587.89** |
| | | |
| **IV. COSTS OF ADMINISTRATION** | | |
| | | |
| Attorney's Fees | | $ 38,395.32 |
| Accountant | | $ 4,396.25 |
| Court Costs | | $ 919.29 |
| First Union summons expenses | | $ 136.50 |
| First American summons expenses | | $ 90.25 |
| | | |
| *TOTAL COST OF ADMINISTRATION* | | **$ 43,937.61** |
| | | |
| | | |
| **TOTAL RECOVERY re: Western** | | **$ 305,013.39** |
| | | |
| Additional year of interest chargeable to Goss | | $ 12,074.15 |
| | | |
| **TOTAL JUDGMENT AGAINST GOSS**[1] | | **$ 317,087.54** |
| | | |
| **TOTAL JUDGMENT AGAINST WESTERN** | | **$ 250,000.00** |

---

[1] This amount includes one year of interest that is not chargeable against the bond but that is chargeable against defendant Anthony L. Goss due to the Court's determination that the surety can be charged with interest only since the date the bond was issued.

This amount contemplated not only the amounts by which the estate had been dissipated prior to Ms. Torbert's demise, but also pre-judgment interest dating back to the date of the bond's execution, and attorney's fees. From this adverse judgment the appellant seeks relief in this Court, arguing that the trial court erred as a matter of law in awarding judgment for the amounts dissipated prior to the execution of the bond, and that the court abused its discretion in awarding pre-judgment interest and attorney's fees. The fidelity bond question reads as follows:

> That we, _____Anthony L. Goss_____, as Principal(s), and the WESTERN SURETY COMPANY, a corporation duly authorized to do business in the State of Tennessee, as Surety, are held and firmly bound unto the State of Tennessee in the sum of _____TWO HUNDRED FIFTY THOUSAND----------------------------- ($_250,000.00_) DOLLARS, (NOT VALID IN EXCESS OF $10,000 FOR GUARDIANS OR CONSERVATORS OF MINORS AND IN EXCESS OF $1,000,000 FOR ALL OTHERS.)

Appellant argues the general rule that a surety on a bond is not responsible for defalcations of its principal occurring prior to the bond's execution, rather the surety is only prospectively liable - responsible for defalcations during the bond's existence. As authority for this proposition, Appellant cites *King v. Jones*, 971 S.W.2d 916, 917-18 (Mo. App. 1998). In *King*, the surety for a guardian was held not to be bound by the guardian's spending of and accounting for $29,500 received by her on behalf of her ward. Prior to the execution of the bond, the funds in question were rightfully received by the guardian and initially accounted for to the ward. Also, prior to the execution of the guardian's bond, the guardian Jones expended these funds on a house, but failed to give her ward any ownership interest in the house. Subsequently, King was appointed guardian ad litem. King sought an order holding State Farm, the surety on the original guardian's bond, liable for the $29,500 so misapplied. The trial court entered summary judgment in favor of State Farm and the guardian ad litem appealed, arguing retrospective effect of the bond. The court of appeals affirmed the summary judgment finding first that the expenditure of the funds rightfully within the guardian's possession occurred prior to the execution of the bond, and secondly that, due to Jones' inability at all times to return the funds to her ward, the surety should not be held liable for the $29,500.

Said the court:

> It is important to note that in *Gilliam*, the court pointed out that when the guardian filed her first settlement on October 26, 1965, she still had on hand funds sufficient to make restitution to the purchasers. *Id.* This fact distinguishes *Gilliam* and I*n re Keisker's Estate* from the present case because there is no evidence in this case that Jones was able to reimburse the estate during the time she was bonded by State Farm. In fact, there is substantial evidence that Jones was unable to reimburse the estate. Jones' answers to interrogatories indicated that she had no assets. In response to State Farm's request for admissions, King stated that he had "no evidence that Helen Jones could ever reimburse the estate." In addition, King's report to the probate

court acknowledged that "it is obvious that [Jones] is without funds" to pay back the $29,500.

*King v. Jones*, 971 S.W.2d at 921.

This Missouri court's discussion alludes to the two methods by which courts have recognized the retroactive liability of sureties for their principals antecedent defalcations.

### (1)  The Continuing Duty To Recover Misappropriated Assets To The Estate.

One of the two well-reasoned rationales that courts have relied upon to find coverage for defalcations committed prior to the bond's execution is that a fiduciary who misappropriates or misapplies assets has, subsequently, a continuing duty to recover those assets to the estate.  A court-fiduciary who fails to recover such misappropriated assets from himself is continually in breach.  *See Bromen v. O'Connell*, 185 Minn. 409, 241 N.W. 54 (1932)(the duty to make good a loss by defalcation is a continuing one); *Beakley v. Cummingham*, 112 Ark. 71, 165 S.W. 259, 263 (1914) (guardian's failure to preserve assets of the estate until accounting was a continuing breach); 28 C.J. 1293, § 492; *Cf. National Surety Corp. v. Ellison*, 88 F.2d 399 (8th Cir. 1937); *Mitchell v. Columbia Casualty Co.*, 111 Mont. 88, 106 P.2d 344 (1940)(acknowledging theory of liability predicated upon continuing breach).

\* \* \*

### (2)  The Duty to Account.

The second, distinct, most common rationale . . . is based upon the trustee's breach of his duty to account for and his duty to pay over the assets of the estate during the term of the later-filed bond.  The surety on the later-filed bond is not held liable for the defalcations or misappropriation, committed prior to the bond's issuance, *per se*; rather, the surety is held liable for the trustee's failure to account for those misappropriated or converted funds and to pay them over *during* the term of the later-filed bond.

*In re Foodsource, Inc.*, 130 B.R. 549, 562-63 (N.D. Cal. 1991).[1]

The general rule of prospective liability has been recognized in Tennessee.  The only authority supporting the general rule, however, concerns a corporate officer.  *See Stevenson v. Union*

---

[1]  Admittedly, the referenced opinion deals with the ability of a principal to bind the surety of a later-filed, additional bond in cases of subsequent bonds and sureties.  Nonetheless as explained infra the same rule applies to a surety on a court-appointed fiduciary's bond.

*Indemnity Co.*, 160 Tenn. 603, 28 S.W.2d 346 (1930). In contrast, our statutes recognize the duties of an executor to be equal to the duties of a receiver in chancery, i.e. a court-appointed fiduciary. *See* Tenn. Code Ann. § 30-1-310 (2001). In this respect, this Court finds the following instructive.

> [M]ost authorities recognize court-fiduciary bonds as a distinct sub-class within the category of official bonds. They have been held subject to the special rule that later-filed, additional court-fiduciary bonds cover defalcations during the trustee's entire term, which, as the term is continuous, may have occurred prior to the bond's issuance. *Accord Waldrep v. Merkle*, 38 F.Supp. 165, 170-72 (W.D.Okla.1941); *see LaCoste v. Splivalo*, 64 Cal. 35, 30 P. 571 (1883); *Bellinger v. Thompson*, 26 Or. 320, 37 P. 714, 718 (1894) (general rule of prospective application of official bonds has "no application" to court-fiduciary bonds).

*In re Foodsource, Inc.*, 130 B.R. at 561.

Several jurisdictions have recognized this retrospective liability of an executor's surety as follows:

> As the bond covers the duty to make a just and proper final accounting as to all property received during the course of the administration, the general rule, unless the bond provides otherwise, is that the sureties are liable for assets of the estate which their principal received before as well as after the execution of the bond, in case of the principal's conversion or maladministration in respect of such assets or failure to render due account thereof.
> The surety is liable for property received by the representative prior to his appointment, at least where he lists it in his inventory and appraisement.

34 C.J.S. § 904 (footnotes omitted).

> Likewise, our legislature has recognized the existing onus on executors and their sureties:

> All executors and their sureties shall be liable upon their bonds for the performance of all the trusts of the will which they are required to perform, as also all duties devolving upon them as executors, as well in relation to the real as personal estate; and, in like manner, administrators with the will annexed, and their sureties, shall be liable upon their bonds for the performance of all the trusts and duties of their respective offices, as well in relation to real as personal estates; and such bonds, when taken substantially in the forms prescribed by law, shall bind such executors and administrators, and their sureties, as herein provided.

Tenn. Code Ann. § 30-10-204 (2001).

Finally and most importantly this Court recognizes the logical effect obtained by the trial court. Mr. Goss's defalcations made him a debtor to the estate. As our Supreme Court said:

The degree of diligence required of an administrator who is a debtor to the estate, in the payment of the debt at the suit of those who are entitled to the fund, is the same that is imposed upon him in collecting a debt from a third party. *Spurlock v. Earle*, 8 Baxt. 437. And the liability of the surety on his official bond is the same as where the debt was due by a stranger. The criterion of the administrator's liability is that degree of diligence which would be expected of a reasonably prudent and diligent man in the management of his own affairs. Where good faith is shown, our courts do not hold him to the utmost degree of diligence. *Mickle v. Brown*, 4 Baxt. 468; *In re Cator*, 14 Lea. 408. Under the most liberal application of the note, the surety in this case is liable.

*Rader v. Yeargin*, 85 Tenn. 486, 490, 3 S.W. 178, 179 (1887).

Appellant argues that "Goss's alleged malfeasance initially had absolutely no connection with any of his duties as executor." This Court finds the word "initially" to be the most telling portion of this argument. When viewed as a whole, Mr. Goss's conduct constituted a continuing exploitation of a confidential relationship by the dominant party unduly influencing the decedent in order to obtain benefit from her estate so that property rightfully belonging to the heirs at law was dissipated by over $100,000.00 and continued to be dissipated as the bonded executor carried out his duties. There is no doubt that, when viewed *in toto*, the acts of the executor prior to and continuing through the execution of the bond bound the surety for the amounts by which that the executor dissipated the estate. The preponderance of the evidence shows that during the four years Mr. Goss lived with Mrs. Torbert, he gained her confidence by performing odd jobs on the property which she occupied with her sister. As the health and capacity of the sisters began to diminish, Mr. Goss insinuated himself into Mrs. Torbert's business affairs. During the latter years of Mrs. Torbert's life, Goss obtained a general power of attorney, withdrew certain of Mrs. Torbert's stock holdings, conducted, with the aid of the his girlfriend Ms. Haguewood, a purchase of certain real property, and managed to compose a will which purported to nominate Mr. Goss as executor and which also, as luck would have it, was typed by Ms. Haguewood. Under the authority of executor, and buttressed by the bond, Mr. Goss continued to dissipate the estate and failed to properly account for said dissipation. The practical effect of this scheme, as seen through the hindsight of this action against Mr. Goss and the surety, was a total reduction in the estate by $172,487.69. Mr. Goss is not to benefit from the exercise of undue influence. The prevention of this benefit is the very purpose of the trust established in the trial court's order. Since that trust places the $172,487.69 back into the estate, the surety is to be liable therefor.

Contrary to Appellant's assertion, the Western Section of this Court addressed a surety's liability for the misdeeds of an executor. *Tenn. State ex rel. Teague v. Home Indemnity Co.*, 59 Tenn. App. 518, 442 S.W.2d 276 (1967). The surety challenged the trial court's judgment as to $5,000 dissipated from the estate of John Wright Gooch by his nephew and eventual administrator, Johnson Gooch. The decedent had been persuaded by the nephew administrator to make a distribution from his estate in the amount of $10,000. Due to previous reductions procured by the same nephew, only $5,000 could be withdrawn from the available accounts. Nephew Gooch, who

had been given a general power of attorney, much like Mr. Goss in this case, promptly deposited the $5,000 "to his own personal credit." *State ex rel. Teague*, 59 Tenn. App. at 522, 442 S.W.2d at 278. Of particular import for the case at bar, the Court in *State ex rel. Teague*, found the following:

> In the case at bar John Wright Gooch authorized a gift of $10,000. Only $5,000 or one-half of the intended gift was ever withdrawn from the bank and put in the hands of Johnson Gooch for delivery to the intended donees. From his actions we must infer that Johnson Gooch, agent for John Wright Gooch, received the $5,000 from his principal, John Wright Gooch, with a secret intention to convert the same to his own use or deliver it to his (Johnson Gooch's) wife. Thus insofar as the principal, John Wright Gooch, was concerned it became an incomplete and abortive gift even of the $5,000 because of the perfidy and fraud of his agent, Johnson Gooch. The $5,000 which was on deposit in the Selmer, Tennessee, bank in the name of Johnson Gooch, agent of John Wright Gooch, was in law and in fact still the property of John Wright Gooch when Johnson qualified as administrator of John Wright Gooch's estate on November 3, 1955.

*State ex rel. Teague*, 59 Tenn. App. at 527, 442 S.W.2d at 280.

The Court found that the executor held the amounts misappropriated in trust. The facts below suggest that this constructive trust was appropriate inasmuch as Mr. Goss obtained the funds in question under circumstances which would suggest undue influence. In addition, Mr. Goss failed to properly account for those funds. Since those funds were rightfully includable in the estate by virtue of the constructive trust, the executor and his surety became liable therefor. *See generally, Sanders v. Forcum-Lannom, Inc.*, 475 S.W.2d 172, 174 (Tenn. 1972) (recognizing the well established rule in this state that a constructive trust arises against one who by fraud, duress or abuse of confidence obtains property which he ought not in equity and good conscience hold and enjoy); *see also Colvert v. Nashville, C. and S.T. Railway*, 186 Tenn. 142, 208 S.W.2d 1008 (1948). Thus, for the reasons and under the authorities listed, *supra*, this court finds no error in the trial court's holding.

II. Prejudgment Interest

Appellant argues that the court abused its discretion in awarding prejudgment interest. As general authority for this proposition, Appellant cites *Draper v. Great American Ins. Co.*, 224 Tenn. 552, 458 S.W.2d 428, (1970). Contrary to the assertions in Appellant's brief, the cited authority concerns the statutory creature of interest as matter of right under Tennessee Code Annotated section 47-14-107. *Draper*, 224 Tenn. at 561, 458 S.W.2d at 432.

In the case at bar, the trial court awarded prejudgment interest pursuant to Tennessee Code Annotated section 47-14-123. Unlike section 107 considered in *Draper*, section 123 is a statutory recognition of interest as an element of damages:

> Prejudgment interest. – Prejudgment interest, i.e., interest as an element of, or in the nature of, damages, as permitted by the statutory and common laws of the state as of April 1, 1979, may be awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum; provided, that with respect to contracts subject to § 47-14-103, the maximum effective rates of prejudgment interest so awarded shall be the same as set by that section for the particular category of transaction involved. In addition, contracts may expressly provide for the imposition of the same or a different rate of interest to be paid after breach or default within the limits set by § 47-14-103.

Tenn. Code Ann. § 47-14-123 (Tenn. 2002).

Our state supreme court in considering the award of prejudgment interest has provided the principles which should guide this Court's evaluation of the trial court's exercise of discretion:

> Several principles guide trial courts in exercising their discretion to award or deny prejudgment interest. Foremost are the principles of equity. *Tenn.Code Ann. § 47-14-123*. Simply stated, the court must decide whether the award of prejudgment interest is fair, given the particular circumstances of the case. In reaching an equitable decision, a court must keep in mind that the purpose of awarding the interest is to fully compensate a plaintiff for the loss of the use of funds to which he or she was legally entitled, not to penalize a defendant for wrongdoing. *Mitchell v. Mitchell, 876 S.W.2d 830, 832 (Tenn.1994)*; *Otis, 850 S.W.2d at 446.*

*Myint v. AllState Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998).

Western Surety further argues that the prejudgment interest should not date back to the execution of the bond in 1993. It asserts as reason therefore, the lack of discovery of any misappropriation of funds until 1996. Nonetheless, the unconditional bond executed by Western Surety contained no exclusion for interest as damages, and Western Surety's obligation, therefore, stems from the misdeeds of the original executor Mr. Goss. Thus, the award of prejudgment interest is available to the extent that Mr. Goss prevented the estate from utilizing the funds to distribute. As such this Court finds no abuse of discretion in the award of prejudgment interest from the date of the execution of the bond.

III.  Attorney's Fees

Appellant would argue that portions of the attorney's fees assessed were not necessitated by the defendant Goss in his fiduciary capacity and, therefore, not chargeable against the fidelity bond. A review of the record reveals the contrary to be true.  The will that gave rise to the execution of the bond was found to be invalid.  This invalid will, procured by the executor for whom Western Surety agreed to be bound was the very spring that snared the estate, hamstrung original counsel and attempted to divest the rightful heirs.  Tennessee Code Annotated section 35-50-110 provided the necessary power to the estate to procure the requisite professional services to vindicate its rights, imperiled as they were by Mr. Goss.  Western Surety agreed to be responsible for these costs when it agreed to act as surety for Mr. Goss's fidelity, which the record clearly demonstrates was painfully absent.  Therefore, this Court finds no abuse of discretion in the award of attorney's fees against the surety.  The trial court's decision is affirmed in all respects.  This cause is remanded for further proceedings as may be necessary in the trial court.

Costs are assessed to Appellant.

_____
WILLIAM B. CAIN, JUDGE